COMMONWEALTH *vs.* PAINE G. BALLOU & another.

Middlesex. Nov. 26, 1877. — Jan. 1, 1878. COLT & LORD, JJ., absent.

The keeper of a house of ill fame may be proceeded against by indictment under the Gen. Sts. *c.* 165, § 13, or by indictment or complaint under the Gen. Sts. *c.* 87, §§ 6, 7.

An indictment for keeping and maintaining, at a place and time named, "a certain building, to wit, a dwelling-house, used as a house of ill fame, resorted to for prostitution, lewdness and for illegal gaming, and used for the illegal sale and keeping of intoxicating liquors, the said building, so used as aforesaid, being then and there a common nuisance," is under the Gen. Sts. *c.* 87, §§ 6, 7, and is not bad for duplicity.

INDICTMENT, charging that the defendants, on January 1, 1876, and on divers other days between that day and the day of the finding of the indictment, at Marlborough, "did keep and maintain a certain building, to wit, a dwelling-house, used as a house of ill fame, resorted to for prostitution, lewdness and for illegal gaming, and used for the illegal sale and keeping of intoxicating liquors, the said building, so used as aforesaid, being then and there a common nuisance."

In the Superior Court, before the jury were empanelled, the defendants filed a motion to quash the indictment, on the ground that it was bad for duplicity, and set out in one count two distinct offences, namely : " 1. The offence of keeping a house of ill fame, resorted to for prostitution and lewdness. 2. The offence of keeping and maintaining a building resorted to for prostitution, lewdness and for illegal gaming, and used for the illegal sale and keeping of intoxicating liquors, the said building, so used as aforesaid, being then and there a common nuisance." *Pitman*, J., overruled the motion.

At the trial, the government offered evidence tending to show both that the house was kept as a house of ill fame, resorted to as aforesaid, and for the illegal sale of intoxicating liquors.

The judge instructed the jury that if they found that the defendants kept or maintained the building, at the place and within the time covered by the indictment, for either of these purposes, they should return a verdict of guilty.

The jury returned a verdict of guilty; and the defendants filed a motion in arrest of judgment on the following ground ·

" The indictment is bad for duplicity. It sets forth with apt words that the defendants, on a day certain, were guilty of the statute offence provided against in the Gen. Sts. *c.* 87, §§ 6, 7 and to which one penalty is affixed by statute. It then avers in the same count that the defendants were guilty of the statute offence provided against in the Gen. Sts. *c.* 165, § 13, to which another and different penalty is affixed."

The judge overruled the motion ; and the defendants alleged exceptions.

*G. H. Ball,* for the defendants.

*W. C. Loring,* Assistant Attorney General, (*C. R. Train,* Attorney General, with him,) for the Commonwealth.

MORTON, J. By the Rev. Sts. as amended in 1849, it was provided that every person who shall keep a house of ill fame, resorted to for the purpose of prostitution or lewdness, shall be punished by imprisonment in the jail not more than two years. Rev. Sts. *c.* 130, § 8. St. 1849, *c.* 84.

The St. of 1855, *c.* 405, §§ 1, 2, provided that all buildings, places or tenements used as houses of ill fame, resorted to for prostitution, lewdness or for illegal gaming, or used for the illegal sale or keeping of intoxicating liquors, shall be common nuisances, and any person keeping or maintaining any such common nuisance shall be punished by fine not exceeding one thousand dollars, or by imprisonment in the jail not more than one year.

It was held in *Commonwealth* v. *Davis,* 11 Gray, 48, that the St. of 1855, repealed by implication the provisions of the Rev. Sts. above cited. But, in the revision of 1860, the Legislature reënacted the provisions of the St. of 1855, *c.* 405, §§ 1, 2, without any material change. The words, " used as houses of ill fame," were omitted, but the words descriptive of such houses, " resorted to for prostitution or lewdness," were retained, and the meaning is plainly the same as if the omitted words had been retained. Gen. Sts. *c.* 87, §§ 6, 7.

It also provided, in a subsequent chapter, that " whoever keeps a house of ill fame, resorted to for the purpose of prostitution or lewdness, shall be punished by imprisonment in the jail not exceeding two years," thus reënacting the provisions of the Rev. Sts. as amended by the St. of 1849. Gen. Sts. *c.* 165, § 13. As

both those provisions of the General Statutes were enacted and went into effect at the same time, we cannot suppose that it was intended that one should repeal or supersede the other. The fair inference is that the Legislature intended that the keeper of a house of ill fame might, at the option of the government, be proceeded against, either by indictment under *c.* 165, or by complaint or indictment under *c.* 87, as a keeper of a common nuisance. This construction was assumed, though not adjudicated, in *Commonwealth* v. *Lambert*, 12 Allen, 177, and in *Commonwealth* v. *Ring*, 111 Mass. 427.

It appears that the indictment in this case was intended to be brought under the Gen. Sts. *c.* 87. It alleges that the defendant, at the place and time named, "did keep and maintain a certain building, to wit, a dwelling-house, used as a house of ill fame, resorted to for prostitution, lewdness and for illegal gaming, and used for the illegal sale and keeping of intoxicating liquors, the said building, so used as aforesaid, being then and there a common nuisance." It follows substantially the words of the statute, except that it contains the words, " used as a house of ill fame," not found in the statute. But those words do not alter the sense; they may be rejected, and the meaning would be the same. And they do not serve to create any doubt as to the intention of the pleader to allege an offence under the Gen. Sts. *c.* 87. We are of opinion that this indictment alleges with certainty the offence created by that chapter, and that it could not be held to be under *c.* 165, § 13.

It follows that it was not bad for duplicity, and that the court correctly ruled that the jury might return a verdict of guilty if they found that the defendant kept or maintained the building within the time covered by the indictment, for either of the illegal purposes named therein. *Commonwealth* v *Kimball*, 7 Gray, 328.                              *Exceptions overruled.*